Mickelson v. New East Tintic Ry. Co.

JAMES MICKELSON, Respondent, v. NEW EAST TIN-
TIC RAILWAY COMPANY, Appellant.

ACTION FOR DAMAGES—PERSONAL INJURIES—VOLUNTEER OR EMPLOYEE—
INSTRUCTIONS — INTRUDER ON RAILWAY — DUTY OF CORPORATION—
SILENCE NO RATIFICATION OF UNAUTHORIZED EMPLOYMENT—NOT AN
ESTOPPEL — INSTRUCTION — OBJECTION TO — WHEN NEED NOT BE
SPECIFIC — REQUESTED INSTRUCTION — DEEMED EXCEPTED TO — EVI-
DENCE—HOSPITAL EXPENSES—WHEN INADMISSIBLE.

1. ACTION FOR DAMAGES : PERSONAL INJURIES : VOLUNTEER OR EMPLOYEE :
INSTRUCTIONS. In an action for damages for personal injuries al-
leged to have been sustained by plaintiff while in the employ of de-
fendant as a railway brakeman on one of defendant's trains, where it
appears from the evidence that plaintiff was not an employee at the
time of the accident but a mere volunteer, unless a request of the en-
gineer of the train, that plaintiff assist him, so that he, the engineer,
could get off early could be deemed an employment, a request that the
court charge the jury, that, "Jones, the engineer, did not by virtue
of his position as engineer, have any authority to employ the plain-
tiff as a brakeman for the defendant. And if he engaged the plain-
tiff to assist him in the management of the train for his own conven-
ience, then the plaintiff did not by reason of such employment be-
come the servant or employee of the defendant company," was proper
and should have been given; and it is an error to modify a request
for such an instruction by adding "unless you further find from the
evidence that the defendant, or its agent, either knew of such em-
ployment and acquiesced therein, or that the defendant, or its agents,
on the day of the accident and prior to such accident, saw plaintiff
working on and about said train, assisting said engineer, and made
no objection thereto."

2. INTRUDER ON RAILWAY : DUTY OF CORPORATION : SILENCE NO RATIFI-
CATION OF UNAUTHORIZED EMPLOYMENT : NOT AN ESTOPPEL. The mere
seeing, by an officer of a railway company, of a person on or about
its train, casts no duty upon the corporation to take affirmative ac-

tion. Nor under such circumstances does mere silence amount to a ratification of employment, or to an estoppel.

3. INSTRUCTION: OBJECTION TO: WHEN NEED NOT BE SPECIFIC: REQUESTED INSTRUCTION: DEEMED EXCEPTED TO. The suggestion that the specific objectionable matter, in an instruction, was not pointed out by counsel in taking an exception to the action of the court in the premises, can not avail, where the exception relates to a request, which was deemed excepted to, and not to an original instruction given by the court of its own motion.

4. EVIDENCE: HOSPITAL EXPENSES: WHEN INADMISSIBLE. In the absence of any allegation in the complaint respecting hospital or surgical expenses, and there being no demand for damages because of such expenses, evidence as to who paid plaintiff's hospital expenses is improper and inadmissible as tending to prejudice the jury.[1]

Decided December 11, 1900.

Appeal from the Fifth District Court Juab County.—*Hon. E. V. Higgins,* Judge.

Action for damages for personal injuries alleged to have been caused by the negligence of defendant company. From a judgment for plaintiff defendant appealed.

REVERSED.

*Messrs. Bennett, Harkness, Howat, Sutherland & Van Cott* for appellant.

It is not permissible, when undertaking to prove negligence on the part of defendant, to show that he has been negligent at any other times or in other places and in other ways than the one immediately in controversy. Snowden v. P. V. Coal Co., 16 Utah 336.

---

[1]Harrison *v.* Railway Co., 7 Utah 523; Snowden *v.* Pleasant Valley Coal Co., 16 Utah 366; Stoll *v.* Daly Mining Co., 19 Utah 271.

All immaterial testimony is presumed to be prejudicial to that party against whom it is admitted. Before the court can say that it is not prejudicial, it must clearly appear to the court that the party against whom it was admitted could not be prejudiced by it. In this case the testimony is so clearly prejudicial that it is apparent the purpose of the plaintiff in insisting upon its remaining was to prejudice the jury against the defendant company.

There is no need of citing a multitude of cases upon this point, as this court has heretofore held that in such cases the judgment of the court below will be reversed. The following cases are directly in point. Snowden v. P. V. Coal Co., 16 Utah 336; Stoll v. Daly Mining Company, 19 Utah 271-286.

Jones, as engineer, had no authority to employ any one on behalf of the defendant company. That is doubtless the law. Church v. Ry. Co. (Minn.), 52 N. W. 647; Atchison Co. v. Lindley (Kan.), 22 Pac. 703.

While knowledge without objection on the part of one having authority to do the act originally may be evidence of acquiescence in and ratification of the act, when done by some one not having authority, yet it is not of itself either acquiescence or ratification. Reubin v. Cohen, 48 Cal. 545; California Bank v. Sayne, 85 Cal. 102; Deland v. Dixon Nat. Bank, 111 Ill. 323, 328; Deane v. Gray Bros. Co., 42 Pac. 443.

*Messrs. Powers, Straup & Lippman* for respondent.

Under the circumstances of the case, were there no other evidence of employment, the engaging of plaintiff by Jones would constitute plaintiff for the time being the servant of the defendant. Fox v. C. St. P. Etc. Ry. Ia., 17 L. R. A. 289; Sloan v. Central Iowa Ry. Co. (Iowa), 11 Am. & En.

R. R. Cases, 145.

"An express contract is not essential to create the relation of master and servant; it may be implied from circumstances." Crowerocks v. Hall, 38 Ind. 402.

"In other words, the relation of master and servant and the responsibility of the master, grows out of, is measured by, begins and ends with his control of the servant." Wiltse v. State Road, 63 Mich. 639; Fell v. Rich Hill etc. Co., 22 Mo. App. 216.

"It exists whenever the employer retains the right to direct the manner in which the business shall be done." Brown v. Smith, 22 Am. St. Rep. 459; Singer Mfg. Co. v. Rohn, 132 U. S. 518.

Under all the circumstances, the question whether plaintiff was a servant of the defendant was one of fact for the jury. Packett Co. v. McCune, 17 Wallace 508; Shultz v. C. M. & St. P. Ry. Co., 40 Wis. 589; 13 Am. & En. R. R. Cases, 453.

Counsel complains because the court refused its request No. 8, wherein it was stated that Jones, the engineer, had no authority to employ plaintiff, and plaintiff could not by reason of such employment become the servant or employee of the defendant and because the court gave such request with the addition: "Unless you further find from the evidence that the defendant or its agent either knew of such employment and acquiesced therein, or that the defendant or its agent on the day of the accident and prior to such accident saw the plaintiff working on or about said train assisting said engineer, and made no objection thereto."

The refusing of such like request is not error though it may be a correct statement of the law as far as it goes. Grand Trunk v. Ives, 144 U. S. 408.

But if the instruction as finally given by the court with his modification or addition, was wrong, counsel should have

excepted to it properly by pointing out the particular objectionable matter and thereby have given the court an opportunity to correct it.   This the defendant did not do, but simply took a general exception to the whole instruction, including the portion of its own request.   Such an exception is not good; especially if any portion of the instruction was correct; and we hardly think counsel will say that the portion which they themselves requested was not law.   Nebeker v. Harvey, 21 Utah 363; 60 Pacific 1029; Haun v. Railroad, 22 Utah 346.

BARTCH, C. J.—The plaintiff brought this suit to recover damages for personal injuries which he claims he received, through the negligence of the defendant, while in its employ as a brakeman, in attempting to couple cars on its railway tracks.   At the trial the jury returned a verdict in his favor for the sum of $5,000, and, from the judgment entered in accordance therewith, the defendant appealed, and has assigned various errors claimed to have been committed during the trial of the cause.   From the record, among other things, ·it appears that the injury complained· of was received on July 12, 1898, at Mammoth, Utah.   At the time of the accident the plaintiff was coupling cars, and, in so doing, had one of his feet caught between the guard rail and main rail of the track, and, finding that he was unable to extricate himself, threw himself outside the track, when the car ran over his foot, crushing it, and necessitating amputation above the ankle. There is some question under the evidence as to whether, at the exact spot where the accident occurred, the railway track belonged to the defendant company, or to the Oregon Short Line Railway Company, the tracks of the two corporations connecting near that point, but from the view we have taken of this case, as it is now before us, we do not deem it necessary to determine this question.   The more serious question is

whether, at the time of the injury the plaintiff was in the employ of the defendant and as to whether or not the court erred in its instructions to the jury, touching this point, for, if he was a mere volunteer, then his case is controlled by entirely different principles from those applicable to that of an employee. There is no dispute that for some time prior and up to June 15, 1898, he was in the regular service of defendant, and working for it in different capacities, among which were breaking and firing on its road, but on that day he quit such service. Whether or not he was an employee of the defendant at the time of the injury, was one of the issues raised at the trial. Respecting this the plaintiff, in his own behalf, testified that he quit work on June 15, 1898, because he did not get full payment for the time of firing; that afterwards he went to Salt Lake City and there saw James A. Cunningham, who was the president and principal stockholder of the defendant; that Cunningham asked him if he had quit working, and, upon being informed that he had, wanted him "to go out there again," and told him he would fix it right with him; that he went back, and on July 9, saw Al Cunningham, the superintendent of the defendant's railroad, and had some talk with him about resuming work; that the superintendent "was just gassing" and said: "I would not have anything to do if you went to work again;" that he did not tell him that he had a talk with his father; that on July 11, he went to work breaking again; that Al Cunningham saw him at work and made no objection; and that John C. Jones was the defendant's engineer. On cross-examination, concerning his resuming work on the eleventh and continuing on the twelfth, the witness testified: "I was going up to the Grand Central mine, and the engineer wanted me to go down with him a trip. I told him I didn't like to, but I went. The engineer said if Cunningham didn't pay me he would. He said, I know they want

you to work again, and I told him what Cunningham said, and he said, 'If Cunningham won't pay you I will,' and on that talk I went again to work, and went down to the Mammoth mill, and Al Cunningham saw I was there, and he didn't come out. When I saw Al Cunningham he was at the Mammoth office, located north of the Mammoth mill. He looked up at the train. We made three trips that day from the Mammoth mine to the mill, but didn't go down to the yard. We hauled three cars at a time. That took us to some time in the afternoon. I should think about 3 o'clock. We commenced about 8 or 9 o'clock. They were delayed on account of Al Cunningham not coming up. The next morning I went to work again. I had not talked with Al Cunningham, didn't see him that day, and didn't see James Cunningham. I was a short distance away from the engine somewhere; I was going some place, I don't remember where, and the engineer hallooed at me and asked me to go and help again that day. I would not have gone back on the twelfth if the engineer hadn't called me that morning, and I went back because he called me. That was about 7 o'clock in the morning when he called me. On the morning of the twelfth I was going up to the Grand Central mine and he called me back."

The witness further stated: "I didn't see Al Cunningham at all on the morning of the twelfth. Did not know where he was on the eleventh. I saw him at the Mammoth office, which was I think 600 or 800 feet from where I was standing on the cars when I saw him."

Jones, the engineer, on behalf of the defendant, testified: "I knew of the plaintiff leaving the employ of the defendant company about the middle of June, 1898. I think the next time I saw him was on July 10. On July 11 he worked on the train. He was standing by the engine, and I asked him if he would help me that day, as I wanted to go

away early, and he immediately went on the engine. I wanted to get away early on some business of my own, and I told him if Mr. Cunningham wouldn't pay him, I would. We got through on the eleventh about 12:30 o'clock. It was about 8 o'clock when I spoke to him. The next morning I saw him again, and he was by the engine in the round house. I didn't have any conversation with him before he got on the train. I didn't say to the plaintiff that I knew they wanted him to go to work, nor did I say that Al Cunningham said so; had no conversation of that purport at that or any time, prior to the accident." * * "Mr. James A. Cunningham has never stated anything to me about hiring a man on the road there. Nor has Al Cunningham ever said anything to me about hiring a man, if he was absent, or if I thought it was necessary."

Al Cunningham, the superintendent of the road, as a witness for defendant, stated: "I was not at the Mammoth office nor at the mill that forenoon. Did not see the plaintiff on the train of the defendant railway company on the eleventh day of July, nor the next day. Did not see him until after the accident, when he was at the Kirkendall hotel."

James A. Cunningham, respecting the conversation, testified to by the plaintiff, as having taken place in Salt Lake City, sworn as a witness, said: "He spoke about going back to work, and I told him no. Says I, 'Jim I think you are too clumsy to brake; you are liable to slip and get hurt or kill yourself, or get someone else hurt. I don't think you had better work on the railroad.'"

In view of this evidence counsel for the defendant requested the court to charge the jury as follows: "Jones, the engineer, did not by virtue of his position as engineer, have any authority to employ the plaintiff as a brakeman for the defendant. And if he engaged the plaintiff to assist him in

23 Utah—4

the management of the train for his own convenience, then the plaintiff did not by reason of such employment become the servant or employee of the defendant company."

In this form the request was refused, but the instruction was then given with the modification: "Unless you further find from the evidence that the defendant, or its agent, either knew of such employment and acquiesced therein, or that the defendant, or its agents, on the day of the accident and prior to such accident, saw plaintiff working on and about said train assisting said engineer, and made no objection thereto."

The appellant contends that the instruction as modified, is, under the facts disclosed, erroneous, and we are of the opinion that this contention is sound. The instruction as requested, without the modification, appears to state the law, applicable to the facts, correctly. There is nothing to show that the engineer had authority to employ any one for the company; nor does it appear that such an exigency existed as might have authorized him to employ the respondent as brakeman. If, then, as indicated by his testimony, the engineer asked the respondent to help him or employed him for his own convenience, or because he wanted to get away early, or to attend to some business of his own, then the respondent did not, because of such employment become the employee of the company. Nor do the facts warrant the first clause of the modification which, in effect, says that the respondent was an employee, if the defendant, or its agent, knew of such employment and acquiesced therein. The evidence fails to show that either the company, or any of its agents, "knew of such employment," and without knowledge of such employment there could, under the circumstances, have been no acquiescence therein. So, under the facts disclosed, the second clause of the modification is objectionable, because, first, the evidence does not show that on the day of the accident any officer or agent

of the defendant saw the plaintiff on the train, and second, if the plaintiff was merely assisting on or about the train for the engineer's own convenience, then neither the company nor any of its agents, upon seeing him so assisting, was bound to object thereto. It is difficult to see why, under the circumstances disclosed by the evidence, the burden should be cast upon the defendant or its officers, to make objections to the presence of the plaintiff on or about the train. Certainly, the mere seeing, by an officer of a railway company, of a person on or about its train, casts no duty upon the corporation to take affirmative action. Nor, under such circumstances does mere silence amount to a ratification of employment, or to an estoppel. Deane v. Gray Bros. A. S. P. Co., 109 Cal. 433; Reubin v. Cohn, 48 Cal. 545; DeLand v. Dixon Nat. Bank, 111 Ill. 323; California Bank v. Sayre, 85 Cal. 102.

It was evident that the request, as modified, was not applicable to the facts disclosed by the evidence, and as it was given to the jury in that form it necessitates a reversal of the case. The suggestion that the specific objectionable matter was not pointed out by counsel in taking the exception to the action of the court in the premises, can not avail the respondent, since the exception relates to a request, which was deemed excepted to, and not to an original instruction given by the court of its own motion.

The appellant also complains of the admission of certain testimony which, it is claimed, was immaterial and prejudicial. The plaintiff, as a witness in his own behalf, was asked by his counsel the following question: "Who paid your expenses at the hospital?" To which the witness replied: "It is not paid." Counsel for appellant objected to the question as being immaterial, and moved to strike out the answer, but both the objection and motion were overruled. We are of the opinion that this testimony was erroneously admitted. In the

absence of any allegation in the complaint respecting hospital or surgical expenses, and there being no demand for damages because of such expenses, such evidence is wholly immaterial, and, under the circumstances shown by the record, we can not say that it was not prejudicial to the rights of the appellant. This testimony, under the pleadings was inadmissible for any purpose. It evidently had a tendency to prejudice and mislead the jury, and therefore ought to have been excluded. This court on several occasions has passed on this class of testimony. Harrison v. Railway Co., 7 Utah 523; Snowden v. Pleasant Valley Coal Co., 16 Utah 366; Stoll v. Daly Mining Co., 19 Utah 271.

We do not deem it important to discuss any other question presented in the record.

The case is reversed with costs, and the cause remanded in order that a new trial may be granted.

*Miner, J.,* concurs; *Baskin, J.,* dissents.