## JONES v. MUTUAL CREAMERY CO.

No. 4885.   Decided December 31, 1932.   (17 P. [2d] 256.)

224

*Claude F. Baker,* of Eureka, and *J. C. Halbersleben,* of Provo, for appellant.

*Bagley, Judd & Ray,* of Salt Lake City, for respondent.

STRAUP, J.

This action was brought by the plaintiff to recover damages against the Mutual Creamery Company for the death of his minor son alleged to have been caused through the

negligence of the company. It was alleged and claimed by the plaintiff that L. D. Mecham was in the employ of the company, and that in the course of his employment, and through his negligence in driving a truck on a public highway, he collided with and ran over plaintiff's son and killed him. The company denied the alleged negligence, and denied that Mecham at the time was, or that he prior thereto had been, in its employ, or that the truck was driven for or on its behalf or in pursuit of its business. That issue was the controlling point in the case. At the conclusion of plaintiff's evidence, the court granted a nonsuit on the ground that it was not sufficiently shown that Mecham was an employee of the company or that it was responsible for any act of negligence that might have been committed by him in driving the truck. On dismissal of the action, the plaintiff appeals.

The creamery company, among other things, at American Fork City, was engaged in the business of buying eggs from nearby poultry raisers. Its general manager at its place of business was Morris Hanson. It also had in its employee one Sager, who two days of the week acted as salesman in selling butter, eggs, cheese, and ice cream. The other five days of the week he was employed to gather eggs from those who had eggs to sell, using his own truck for such purpose, and was paid 25 cents a case for gathering eggs for the company. He gathered the eggs nearby wherever eggs were procurable. In such particular he was employed by the company to solicit and gather eggs for the company on a commission of 25 cents a case, and in doing so he was at liberty to go when and where and to work as early and late as he pleased. He furnished and used his own car for the purpose, and was paid a commission on the amount of eggs procured by him. Mecham in no sense was or had been in the employ of the company or in any manner connected with its business. On the late afternoon of the day in question Mecham accompanied Sager on his truck to the company's plant. It is not claimed

that Mecham went there to do anything for the company. When they arrived at the plant, Sager was informed that a customer, a Mrs. Robinson, had telephoned the company that she had some eggs ready to be delivered and to come and get them. It was Sager's duty to get the eggs. He and Mecham had contemplated going "to a show" that evening. Sager, learning he was to go for the eggs, stated to Mecham (not in the presence of any one) that because of other work he could not get the eggs and go to the show, whereupon Mecham volunteered to Sager that he would go for the eggs to help him out. Sager assented to that, went inside, got a case, put it on the truck, and Mecham drove off. Hanson, the manager of the company, seeing Mecham drive away, asked Sager where Mecham was going and was told to get Mrs. Robinson's eggs. Hanson made no reply thereto. It is not made to appear that Mecham then was yet in hailing distance or that sufficient opportunity was offered Hanson to countermand what Sager in such particular had done or permitted. On the way, plaintiff's minor child was killed through the alleged negligence of Mecham driving the truck with defective and insufficient brakes, etc., driving at an excessive speed of thirty miles an hour and partly off the paved portion of the highway, and not with due care and circumspection. After the accident, Mecham procured the eggs and delivered them to the company, which thereafter were paid for by the company to Mrs. Robinson. It is not shown that when the eggs were received or paid for by the company it had knowledge of the accident or of the particulars thereof.

In view of such facts, we think no liability is shown against the company, and that the case is and ought to be controlled by the cited case of *Mickelson* v. *New East Tintic Railway Company*, 23 Utah 42, 64 P. 463, 465. In that case, and as the facts are disclosed by the opinion, Mickelson at the time of the injury was not, but prior thereto had been, in the employ of the company as a brakeman. As claimed by him, he several days prior to the injury had a conversa-

tion with the president of the company with respect to re-entering the employ of the company, and was told to see the superintendent. He saw the superintendent July 10th, but was not given employment; the superintendent making no definite statement with respect thereto. On the next day the engineer of the crew of the company asked him to go with him to act as brakeman, and told him that, if the company would not pay him for such service, he (the engineer) would. Mickelson thereupon on that day acted as brakeman, and, as he testified, with the superintendent seeing him at work and making no objection. On the next day, the 12th, he, at the request of the engineer, again did the same kind of work, but, as he testified, he on that day did not see anything of the superintendent and no evidence was given to show that the superintendent on that day saw him at work. He was injured on that day, and sought to recover damages against the company on the theory of a relation of master and servant between him and the company, and that the injury was the result of the company's negligence. It was not shown that the engineer had either express or implied authority to employ Mickelson, and evidence was given to show that the engineer had no such authority.

On a submission of the case to the jury, the company proposed this request:

"Jones, the engineer, did not, by virtue of his position as engineer, have any authority to employ the plaintiff as a brakeman for the defendant; and if he engaged the plaintiff to assist him in the management of the train for his own convenience, then the plaintiff did not, by reason of such employment, become the servant or employee of the defendant company."

The court gave the request, but with this modification:

"Unless you further find from the evidence that the defendant, or its agent, either knew of such employment, and acquiesced therein, or that the defendant, or its agents, on the day of the accident, and prior to such accident, saw plaintiff working on and about said train assisting said engineer, and made no objection thereto."

A judgment was had against the company. It appealed, and on the appeal complained of the instruction so given by the court. The question thus presented for decision, in such respect, was whether on the record, or more properly now speaking on the facts as disclosed by the opinion, the instruction as given and as a whole stated the law applicable to the case. The court held that the request as tendered was a correct statement of the law, for the reason that there was not anything to show that the engineer had authority to employ the plaintiff, and inasmuch as the engineer, as indicated by the testimony of the plaintiff, asked him or employed him for his own convenience, the plaintiff did not become the employee of the company, and therefore the company was not under any legal obligation to furnish him a reasonably safe place to work, the negligence complained of resulting in injury. The court then considered the portion of the charge constituting the modification of the request. It is claimed that what the court stated with respect thereto was obiter dictum. We do not think so. The real question to be decided was whether the instruction as given was erroneous. That involved the correctness of the request as tendered as well as the correctness of the modification of it. Complaint was made of the refusal of the court to give the request as tendered, and also of modifying it and instructing the jury, as was done. Both were involved. Both were presented and argued, and both were considered and decided. In considering the modification, the court held it erroneous,

"because: First, the evidence does not show that on the day of the accident any officer or agent of the defendant saw the plaintiff on the train; and, second, if the plaintiff was merely assisting on or about the train for the engineer's own convenience, then neither the company nor any of its agents, upon seeing him so assisting, was bound to object thereto. It is difficult to see why, under the circumstances disclosed by the evidence, the burden should be cast upon the defendant or its officers to make objections to the presence of the plaintiff on or about the train. Certainly, the mere seeing, by an officer of a railway company, of a person on or about its train, casts no duty upon the corporation to take affirmative action. Nor, under such circum-

stances, does mere silence amount to a ratification of employment, or to an estoppel"—citing cases in support thereof.

Thus, as is seen, several grounds or reasons were stated why the instruction as a whole was erroneous, each of which, in the opinion of the court, was sufficient to condemn it. In the case of *Utah Fuel Co.* v. *Industrial Commission,* 73 Utah 199, 273 P. 306, we in substance stated that, where there are two grounds argued, presented, and involved, upon either of which the decision can be rested and both are sustained, the ruling on neither is dictum. Cases are there cited supporting the proposition. The additional cases of *Duncan* v. *Brown,* 18 N. W. 579, 139 P. 140, and *Railroad Companies* v. *Schutte,* 103 U. S. 118, 26 L. Ed. 327, support the same view. Many others could be cited to the same effect.

Thus applying what was ruled and decided in the Mickelson Case, we think it follows that Mecham, neither by employment nor by acquiescence or ratification, became or was the servant or employee of the company rendering it liable for his alleged negligence.

It is not claimed that he either expressly or impliedly was employed by the company. The record without dispute shows that he was not. It, however, is urged that he ostensibly held himself out as the agent of the company, or with the acquiescence of the company (of its manager) assumed to act for it. In our opinion, neither statement is supported by the record. Mecham was not driving the company's truck. He drove Sager's truck. In doing so and going after the eggs he did not assume to act for any one except for Sager and for his convenience, and in fact did so act for him, and for no one else. Against such direct and indisputable testimony, no inference is permissible that he was acting for, or assumed to act for, the company or for any one except for Sager. The question asked by the manager of the company as to where Mecham was going as he was driving away with Sager's truck, and

was told by Sager that he was going to get Robinson's eggs and the manager making no reply thereto, does not show any admission or acknowledgment that Mecham for such purpose was the employee of the company, nor as constituting an assent for and on behalf of the company.

It, however, is further urged that the company became liable for the negligent acts of Mecham on the theory of ratification. The law is well settled and not seriously disputed that, where it is sought to hold a person or company civilly liable for torts committed by another, it must be made to appear that the relation of principal and agent or master and servant existed between the two at the time the tort was committed, and that the tortious act was committed in the course of employment or within the scope of the agency. Here indisputably no such relation was shown to exist. By invoking the doctrine of ratification, it necessarily is implied that no such relation existed between the company and Mecham at the time the tort was committed, but that something thereafter was done by the company which gave sanction and validity to an unauthorized act or acts of Mecham whereby such act or acts became the act or acts of the company. And since, as it is contended, the company sanctioned or gave validity to a particular act of Mecham, therefore it became responsible and liable for all he did or failed to do, including his alleged negligence resulting in the death of plaintiff's child.

As we understand it, the claimed ratification is based on the fact that the company, after the commission of the tort, received the eggs from Mrs. Robinson brought to the company's plant by Mecham and thereafter paid her for them, without any showing that the company when it received or paid for the eggs had any knowledge of the commission of the tort or of any of the particulars thereof, which, as is claimed, constituted a ratification, not only of the unauthorized act of Mecham procuring the eggs from Mrs. Robinson and delivering them to the company and as to the negotia-

tions had between him and Mrs. Robinson, but also an acknowledgment or ratification by the company of a relation of master and servant or of an agency between it and Mecham, rendering it liable for the tort committed by him.

In 2 C. J. 467, it is stated that,

"ratification as it relates to the law of agency may be defined as the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent in doing the act or making the contract, without authority to do so. The substance of a ratification is confirmation after conduct; it confirms; it neither changes the contract nor makes a new one with different terms."

It is also well recognized that, in order that a ratification of an unauthorized act or transaction of an agent or of another may be valid and binding, it is essential that the principal or the person making the ratification had full knowledge at the time of the ratification of all material facts and circumstances relative to the unauthorized act or transaction (2 C. J. 476), and also that an intention to ratify is essential and which must be shown either by an express or by an implied ratification (2 C. J. 484, 492). When one thus ratifies an act or contract performed or entered into for and in his behalf by one unauthorized to do so, the validity of the act or contract relates back to the time when the unauthorized act or contract was performed or entered into, and renders it as effectual as though it had previously been authorized; and, where he accepts the act or contract and seeks to enforce it or claims the benefit of it, he is required to accept the whole of the transaction or contract, which, when ratified, will also bind the other party thereto, to the same extent as though it had been previously authorized.

When the company received and accepted the eggs from Mrs. Robinson, delivered to it by Mecham, it of course became liable to Mrs. Robinson for the eggs. It in such case

became liable to her regardless of any relation of master and servant or of agency between the company and Mecham. Had the company not paid Mrs. Robinson for the eggs, it could not have justified any refusal to pay on her demand of payment on the ground that Mecham was unauthorized to procure the eggs from her or to deliver them to the company, though there had been no ratification, any more than if the eggs had been stolen from her and by the thief delivered to the company. In other words, the company's liability to Mrs. Robinson rested upon the fact that it for its use and benefit had received the eggs, the property of Mrs. Robinson, and hence was required to pay for them, regardless of the manner in which they may have been delivered to the company. At most, the doctrine of ratification can apply only to the transaction had between Mecham and Mrs. Robinson, a ratification of the unauthorized act of Mecham in procuring the eggs from her and delivering them to the company. Assuming that the company did not acquiesce in Mecham going for the eggs, as we think it had not, and that Mecham at the instance and request of Sager and for his convenience went to get the eggs, and on the way, because of his alleged negligence, met with an accident resulting in the death of plaintiff's child, and had immediately been arrested, or for any other reason arising out of the accident was unable to get the eggs, or did not get them, we think it could not successfully be contended that the company was civilly liable for the tort committed by Mecham, because in such case no relation of master and servant or agency was shown. Since, however, after the commission of the tort, Mecham procured the eggs from Mrs. Robinson and delivered them to the company, and because the company received them and paid Mrs. Robinson for them, without any showing that the company then had knowledge of the commission of the tort, the claim is made that the company not only ratified the unauthorized act of Mecham procuring the eggs from Mrs. Robinson, but also ratified the commission of the tort, in the particular that,

by receiving the eggs and paying for them, it acknowledged and ratified a relation of master and servant or of an agency between it and Mecham, rendering it liable for the alleged negligence of Mecham. In other words, the contention is that, if the company had not received the eggs and paid for them, there would have been no ratification either of the unauthorized act of Mecham in procuring the eggs nor of the commission of the tort by him. But, since the company received the eggs and paid for them, it then, on the theory of ratification, is claimed that the company became liable for all that Mecham did or failed to do in procuring the eggs and delivering them to the company. Suppose a stranger wholly unauthorized by the company had assumed to act for it and had procured the eggs from Mrs. Robinson for the purpose of delivering them to the company for its use and benefit, but who on the way and through his negligence on the highway had injured another, and without knowledge of such injury or the particulars thereof the company had received the eggs from the stranger and paid the owner therefor, we think it clear that the fact of so receiving the eggs and paying for them could in no sense be regarded as a ratification of the tort committed by the stranger and of which the company had no knowledge, or as an acknowledgment or ratification of a relation of master and servant or of an agency between the stranger and the company rendering it liable for the tort committed by him. We cannot yield assent in carrying the doctrine of ratification to such an extent and beyond the purpose and legal principle upon which it is founded.

The case of *Dempsey* v. *Chambers*, 154 Mass. 330, 28 N. E. 279, 13 L. R. A. 219, 26 Am. St. Rep. 249, is cited as an authority rendering the company here liable on the theory of ratification. In that case the plaintiff ordered coal from the defendant, a coal dealer, which a third person, without the defendant's knowledge or authority, undertook to deliver, and in so delivering the coal injured the plaintiff's building by breaking a plate glass window. Afterwards,

and with knowledge of the accident, the defendant demanded payment for the coal. It was held that the defendant was liable for the injury because his demand for payment was a ratification of the acts of the person delivering the coal. There the unauthorized person assumed to act for the defendant. Here the evidence without dispute shows that Mecham, the unauthorized person, assumed to act and acted for Sager and not for the company. In the next place, the commission of the tort affected the property of the person for whom the unauthorized person delivered the coal. In other words, the tort related directly to and affected the rights of the person with whom the unauthorized person was dealing and transacting assumed business for the defendant. Hence, when the defendant sought to hold the plaintiff liable for the coal received by him, the defendant, as between him and the plaintiff, was required to also assume all burdens and defenses created by reason of the dealings between the unauthorized person and the plaintiff.

The principle of ratification there involved is one where a person unauthorized assumed to act or make a contract for or on behalf of another, with a third person, and, where such other sought the fruits of it and to enforce the act or contract against the third person and where in so doing, he, as to such person, was required also to accept all liabilities and burdens resulting therefrom and arising out of the dealings had between such third person and the unauthorized person. According to the opinion, had the dealer not demanded payment of the coal, there would not have been any ratification, and hence no liability on his part for the tort. In other words, the opinion seems to imply that, if a stranger, wholly unauthorized and without knowledge of the dealer and without authority, assumes to act for him, and takes his coal and delivers it to another, who accepts and uses it for his own benefit, and the dealer, learning who got the coal and used it, but also learning that the unauthorized stranger in delivering the coal injured the building

or premises of the person to whom the coal was delivered, must bear the loss of his coal in silence and let such other have and use it without pay, for, if the dealer demands payment for what such other received and used, he thereby renders himself liable for the tort committed by the unauthorized stranger, which may amount to a liability greater than the value of the coal, but which liability in no sense could have been asserted against the dealer, had he not demanded payment of the coal. While we think the doctrine of ratification was there carried about to the breaking point, yet the case in hand is even distinguishable from that case, in the particulars that here no showing was made that the company, when it received or paid for the eggs, had knowledge of the commission of the tort or of the circumstances thereof, and where the tort in no sense invaded or affected any rights of Mrs. Robinson or created any burden on her, or otherwise adversely affected her because of the dealings or transaction had between her and Mecham.

Though it be assumed that the company by receiving the eggs and paying Mrs. Robinson therefor, as between the company and Mrs. Robinson, adopted and ratified the unauthorized act of Mecham in procuring the eggs and delivering them to the company, yet, because thereof, to carry the doctrine further and as an acknowledgment or confirmation or ratification of master and servant or of an agency between the company and Mecham rendering it liable to all the world for his torts, is to carry the doctrine even beyond anything decided in the Massachusetts case.

We therefore are of the opinion that the judgment of the court below should be affirmed. Such is the order. Costs to the respondent.

CHERRY, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.