272 P.2d 586

**GRIFFITHS v. ARCHIBALD et al.**

**No. 8135.**

Supreme Court of Utah.

July 22, 1954.

5. Corbin, Contracts, Sec. 1468. See 5 Williston, Contracts, Sec. 1663.

294

Perry & Perry, Logan, for appellant.

George D. Preston, Logan, for respondents.

HENRIOD, Justice.

Appeal from a no cause of action judgment where plaintiff, Maybell Griffiths, claimed a prescriptive easement in a ditch which crossed the land of defendant, Archulious Archibald. Affirmed, costs to defendants.

Maybell and Archulious are sisters who, with their respective husbands, have resided on adjoining lots for about a quarter century. For more than 20 years, during irrigation seasons, plaintiff has watered her garden from a ditch running across her sister's lot, and such use has been open, visible, notorious, continuous, uninterrupted and exclusive, [1] all of which defendant knew and which the jury, under special interrogatories and instructions, found to be, true. Plaintiff insisted that she claimed by right and adversely. The jury found such usage became "hostile" only in 1952, during which year two significant and disturbing circumstances arose to plague the sororal serenity. Maybell and Archulious disagreed over entitlement of certain assets left by their departed mother, which created an atmosphere hostile in the Websterian sense,[2] and ended flight of the dove of peace between the two domains. The spouse of Archulious unceremoniously filled the ditch, which ended the flow of water and created an atmosphere, not only hostile in the Websterian sense, but also in the strict legal sense where matters of prescription are being considered.[3]

It is urged that the court confused the jury with a special interrogatory and the explanation incident thereto. The jury was asked if plaintiff's possession had been "hostile" or "friendly," which was answered as being friendly until 1952 when it became the former. Plaintiff asserts that the jury must have thought that the word "hostile" connoted "ill will" or "malevolence" toward defendant, and that such ill will must have persisted throughout the prescriptive period to create any rights. We cannot agree with such contention. The trial court's first words of explanation were that "By the word 'hostile' as used in this case is meant that one in possession of a ditchway claims the exclusive right thereto *and a denial of the owner's right to possession.*" (Italics supplied.) He further advised that a mere neighborly or sisterly accommodation would not permit plaintiff to succeed, and that if the jury found that defendant *permitted* the use of the ditch as such accommodation, it could not find an adverse user. Nowhere did the court instruct that the word "hostile" required a feeling of hatred or ill will.

1. Thompson, Real Property, Perm.Ed., Vol. 1, Sec. 414 et seq.

2. Webster's New International Dictionary (2nd), Merriam Co.

3. 1 Am.Jur. 870, Sec. 136 et seq.

The jury well may have found a use by permission under the facts of the case and the instruction given. The evidence is uncontroverted that defendant's husband stopped the flow of water in 1952 and plaintiff thereafter reopened the ditch, which circumstance, the jury may have concluded, represented the first hostile or adverse conduct, in the legal sense, (as explained by the court) that Maybell had evinced toward Archulious and the latter's property. Particularly the jury could have so found in the light of common experience which indicates that ordinarily, before a parting of the ways, use by one close relative of the property of another but rarely is indulged with intent ultimately to appropriate the latter's property by means of technicalities incident to acquisiton of rights by prescription.

McDONOUGH, C. J., and ELLETT, District Judge, concur.

WOLFE, C. J., being disqualified, did not participate in the hearing of this cause.

WADE, Justice (dissenting).

I think the jury's answers to the special interrogatories do not support the judgment which was entered, and that the material issue of whether the use was under a claim of right as distinguished from a permissive use was not submitted to nor determined by the jury and that the instructions were confusing and some of them positively erroneous and misleading. The case should be remanded for new trial.

In Zollinger v. Frank, 110 Utah 514, 175 P.2d 714, on pages 715–716, 170 A.L.R. 770, speaking through Mr. Justice Wolfe, this court said:

"* * * The courts are not in accord as to the exact meaning of 'adverse use' when applied to prescriptive easements. Thompson on Real Property, Sec. 377, Vol. I, page 487. Some of the courts use the phrases 'use under claim of right' or 'hostile use.' Holdsworth in his History of the English Law, Vol. VII, p. 352, says:

" 'It would, I think, be true to say that there is no branch of English law which is in a more unsatisfactory state. There are, indeed, other branches of English law which stand in need of an intelligent restatement; but no mere restatement can clear up the muddle which the courts and the Legislature have combined to make of the law of prescription.'

"Holdsworth's comments on the law of prescription in England are probably equally applicable to the condition in this country which exists as a result of the courts' unfortunate choice of words in characterizing the use necessary to initiate a prescriptive right. Some courts say it must be 'peaceable,' others say 'hostile.' How can the use be both 'peaceable' and 'hos-

tile'? Some say it must be both 'adverse to' and 'acquiesced in by' the servient owner. 'Acquiescence' by the servient owner seems inconsistent with 'adverse' use; it hints more of 'permissive' use for certainly the servient owner 'acquiesces' in a permissive use.

"Regardless of the words used to characterize this element of the nature of the use necessary to give rise to a prescriptive easement, it is our opinion that the courts mean that the use must be *against* the owner as distinguished from *under* the owner.

\*     \*     \*     \*     \*     \*

"We think the better rule is that described as the prevailing rule in the above quotation. That is, where a claimant has shown an open and continuous use of the land for the prescriptive period (20 years in Utah) the use will be presumed to have been against the owner and the owner of the servient estate to prevent the prescriptive easement from arising has the burden of showing that the use was *under* him instead of *against* him. \* \* \*"

The court in its instructions used all of the above mentioned confusing terms including "hostile" and "peaceful" which obviously have contrary meanings. The word "peaceful" is only quoted from plaintiff's pleading but the word "hostile" is emphasized and elaborately defined; however the former seems to more accurately describe some of the elements of a prescriptive use. All of these confusing terms if given the right meaning can be reconciled and tend to describe different elements of a prescriptive use. To understand the right meaning requires a knowledge of the historical background of the doctrine and its present use. To repeat these conflicting terms as was done here and then elaborate on them by abstract definitions, only tends to confuse and mislead the jury.

To avoid such confusion, Mr. Justice Wolfe, in the above quotation, discarded all these confusing terms and said "the use must be against the owner as distinguished from under" him. This description is correct, for to be against the owner, the user, by his words or actions or both, must claim the right to make such use and that the owner has no right to prevent or permit it, and the owner, by his words or actions, or both, must acquiesce in such claimed right. The acquiescence must be in the claimed right to such use as distinguished from a mere willingness to temporarily permit the use. The word "hostile" as used in this connection means merely that the user in making such use, claims that he has a right to the use which the owner has no right to interfere with, or object thereto or even give permission for such use. It does not require that the owner be hostile to such use or that the use be against his will. He must acquiesce in the user's claim of right to such use to the extent that with notice or knowledge thereof he

fails to interrupt or interfere with it sufficiently to make it a mere scramble or contest for such use as distinguished from a peacefully recognized right. The use may be against the owner's will but that is not a necessary requirement of the law. The owner may and often does expressly recognize the user's right to such use as is the case where he expressly intended to confer a perpetual easement but failed to do so legally or he may either expressly or by his actions or both indicate that he recognizes that the use is under a claim of right and that he consents thereto and agrees that the claim is valid and this may be true even though the use was initiated with the owner's consent. In that sense the use must be peaceful, the law does not require that it be against the owner's will, but it must be against or contrary to any right in the owner to prevent such use. If the use is against the owner's will and he interrupts or requires the user to constantly fight or scramble therefor, then the use is not peaceful and cannot create a prescriptive easement. On the other hand if the parties both recognize that the owner has the right to prevent the use but does allow it, then it is a permissive use which will not ripen into a prescriptive easement regardless of the length of time it continues.

That such is the nature of the use required is clear from its historical background and present application. Originally a long user was held to be evidence of a lost grant because both parties acted as if the user had a right thereto the same as they would have acted if the owner had expressly conveyed and granted such right, and the trier of the facts was permitted to infer or find a lost grant from such actions. Later it was held that such use created a presumption of a lost grant which the owner could overcome by evidence to the contrary, then such a presumption was held to be irrebuttable, which means that the easement is created by the use for the prescribed length of time regardless of whether there was a lost grant.[1] The use had to be peaceful in that it was uninterrupted and not merely a scrambling one, and the owner by his words or actions or both must indicate that he acquiesced in the user's claim that he had a right to make such use and that the owner had no right to interfere. If the parties by their actions indicated that the owner had a right to prevent such use but allowed it out of the goodness of his heart, or for some other reason, then such use would be permissive and would not ripen into a prescriptive easement. In modern times such use is often initiated by a parol grant with or without a consideration, or the owner intends to confer a perpetual easement but fails to do so in a valid manner,[2] which explains why the parties

1. See Thompson on Real Property, under Easements by Prescription, Secs. 372 to 377, pp. 480 to 487.

2. See Thompson on Real Property, under Eastments by Prescription, Sec. 390, pp. 504 and 505, also cases cited to that

act as if the use was a matter of right and not merely permissive. Or such use may be initiated with the express consent of the owner without an expressed intention to confer a perpetual easement on the user but under circumstances which indicate that both parties recognized that the use was under a claim of right and agreed with such claim.[3] In all of these cases the use is against or contrary to the right of the owner to interfere as distinguished from being under such right and with his permission, but in no case is the use necessarily against the owner's will. So whether the use is against the owner's will is not determinative and is immaterial in this case.

The jury found the facts by answering five special interrogatories without returning a general verdict. All except one answer was in plaintiff's favor. The jury found (1) that plaintiff had been in actual possession of the ditchway, (2) that it was open and notorious, (3) that it was friendly until 1952 then hostile, (4) that it was continuous for twenty years, and (5) that it was exclusive. The only finding which tends to defeat plaintiff's claim was that the possession (use) was friendly until 1952. This finding can defeat plaintiff's claim only if it is construed to mean that the use was permissive and not under a claim of right. The question propounded was whether the use was hostile or friendly, not whether it was under a claim of right as distinguished from permissive use, nor whether it was against the owner as distinguished from under him. The jury was not instructed either expressly or to the effect that if they found that the use was friendly it would mean that it was permissive and not

effect in notes 99, 1, 2 and 3; also see Coventon v. Seufert, 23 Or. 548, 32 P. 508; Holm v. Davis, 41 Utah 200, 125 P. 403; 44 L.R.A.,N.S., 89; Texas & P. R. Co. v. Scott, 5 Cir., 77 F. 726, 41 U.S. App. 624, 37 L.R.A. 94; Gyra v. Windler, 40 Colo. 366, 91 P. 36, 13 Ann.Cas. 841.

3. See Holm v. Davis, 41 Utah 200, 125 P. 403, 406, 44 L.R.A.,N.S., 89, where we said: "Keeping in mind, therefore, the permanent character of the canal in question and the purposes for which it was constructed, used, and maintained, and that such use had been for a period longer than 20 years, we are forced to the conclusion that the mere fact that the court found that the canal was originally constructed 'with the consent of the then owner of the land' cannot affect appellant's prescriptive right. If such were not the law, then in this state, in view of the arid character of the land embraced within its borders, but few irrigating ditches could now be maintained. * * * Upon the other hand, we are of the opinion that, although a canal, ditch, or flume may have been constructed by a person on or over lands owned by another with the consent or permission of such other owner, yet, if the owner of the canal, ditch, or flume, or his assignee, has used and maintained the same in the same manner as if the same were constructed over his own lands, and where such use and maintenance has continued uninterruptedly and under claim of right for more than twenty years, in such event the owner of the ditch has acquired a right to use and maintain the same perpetually as an easement."

under a claim of right. The word friendly was not defined nor were they instructed that any other than its ordinary meaning was intended. The answer of the jury to that question was the only answer possible under the evidence, for there was no claim that it was unfriendly prior to 1952. Under this question the court did much explaining in which it used most of the confusing terms decried in the Zollinger case but did not mention the word "peaceful." It defined "hostile" and talked about permissive and adverse user, and stated that under certain conditions plaintiff could not prevail, but did not explain that if they found the use was friendly, plaintiff could not prevail or that it would mean that the use was permissive.

Under that question the court instructed that for the plaintiff to prevail the usage "must be against the will" of the defendants. Under this instruction if defendants consented to the usage by acquiescing in plaintiff's claim that she had a right to make such use and agreeing that they had no right to interfere therewith, the use would be friendly and not hostile and plaintiff could not prevail. This is a clear misconception of the law. The law does not require hostility between the user and the owner, nor that the use be against the will, contrary to his wishes or in spite of his opposition, it requires a peaceful use under a claim of right without active interference of the owner. Under such instruction, no matter how strongly plaintiff asserted the right to make such

use and that defendants had no right to prevent or interfere therewith, the very fact that defendants acquiesced in such claim and agreed that they had no right to interfere or prevent the use would defeat plaintiff's claim to a prescriptive easement.

There is no such requirement for a prescriptive use either under the common law or modern times. For the essential element of such use required to create a prescriptive right is that both parties must treat the use as one to which the user had acquired a right to make and with which the owner had no right to prevent or interfere. This doctrine of prescriptive easement was developed under the common law where both parties must act as if there had been a grant of such right, and in modern times such use is often initiated under a parol grant of such right, for if the use is against the will of the owner, how can he act as if there had been a grant of the right to make such use? That part of the instruction is clearly contrary to the historical background of this doctrine, the purpose and the theory on which all prescriptive easements are based. It finds no support in the above quotation from the Zollinger case "that the use must be against the owner as distinguished from under" him, which simply means that the use is contrary to or against any right in the owner to prevent or interfere as distinguished from the use being under or with the permission of the owner who has a right to prevent it if he so desires. If the owner acquiesces

and agrees with the user's claim of right, it is not against his will but it is also not a permissive use for the owner by such acquiescence recognizes the user's right thereto and that he has no right to prevent or interfere therewith. So whether the use is against the will of the owner and whether it is friendly does not determine the rights of the parties in this case, but the court apparently treated these questions as the determinative factors.

The court also erroneously instructed the jury that if the "evidence * * * is not clear and satisfactory to you, you must find that the usage was permissive and not adverse." As quoted above we stated in the Zollinger case that "where a claimant has shown an open and continuous use of the land for the prescriptive period * * * the use will be presumed to have been against the owner and the owner of the servient estate to prevent the prescriptive easement from arising has the burden of showing that the use is under him instead of against him." Here the jury found the facts on which such presumption is based in favor of the plaintiff; the jury should have been instructed that on such a finding the defendants had the burden of showing that the use was under and not against them, and the instruction requiring a finding that the use was permissive in the absence of clear and satisfactory evidence to the contrary was erroneous. It required plaintiff to show by clear and convincing proof what the law requires defendants to disprove.

Thus, I conclude that the finding of the jury that the use was friendly until 1952, was an immaterial fact which was not determinative of this case, that the determinative question was whether the use was permissive or under the defendants as distinguished from under a claim of right or against or conflicted with defendants' ownership of the property. Since the instructions were misleading, confusing and part of them positively erroneous, I think the case should be remanded for a new trial.

CROCKETT, J., concurs in the dissenting opinion of WADE, J.