375 P.2d 762

**Evaline HARMON and Conrad Harmon, Plaintiffs and Appellants,**

**v.**

**Otto RASMUSSEN, LeRee Rasmussen, his wife; Leonard M. Sproul, and American Falls Canal Securities Company, a corporation, Defendants and Respondents.**

No. 9690.

Supreme Court of Utah.

Nov. 2, 1962.

Elias Hansen, Salt Lake City, for appellants.

Bernard L. Rose, Salt Lake City, for respondents.

WADE, Chief Justice.

Plaintiffs, the Harmons, appeal from a judgment of the trial court of no cause for action in favor of the defendants, the Rasmussens, respondents here. By their complaint plaintiffs, the Harmons, seek to establish a right of way for an irrigation ditch by prescriptive easement, claiming adverse use for about 60 years and $400 damages for filling in this irrigation ditch. The court found that the Rasmussens did not fill in the ditch, and that the Harmons had abandoned their prescriptive easement.

The Rasmussens' lot adjoins the south side of 30th South Street for about 360 feet and the west side of 11th West Street for about 140 feet southwest of Salt Lake City. A number of lots face the west side of 11th

West Street south of the Rasmussen property. The Harmon land consists of about 45 acres of land west of the west end of these lots and east of the Jordan River. The Riverdale irrigation ditch comes from Mill Creek, crossing 11th West Street from the east near the south side of the lot just south of the Rasmussens' lot where one branch goes southwest to the Harmon property. The other branch turns north crossing the east end of the Freestone and the Rasmussen lot then runs west across the north side of the Rasmussen lot just south of 30th South Street until it reaches the Harmon property. The ditch in controversy here is the north branch where it crosses the Rasmussen property.

The following map, not drawn to scale but for illustrative purposes only, is in substance copied from an exhibit used at the trial. Eleventh West is shown on the right side of the map and 30th South on the top. It shows the Riverside ditch crossing 11th West from the east and the two branches, one turning north and then to the west, and the other turning southwest. It shows five lots facing 11th West Street and the Harmon property on the west or left side of the map between the west end of the lots and the Jordan River, with a dike on the east side of the Harmon property west of the west boundaries of these lots.

Three questions require consideration: a) Does the evidence support the finding that the Harmons abandoned their prescriptive easement for their ditch over the Rasmussen property? b) Does the evidence require a finding that the Rasmussens ratified the filling in of the Harmon ditch and are liable for the replacement costs? c) Does the evidence require a finding that the Rasmussens purchased their property in good faith without notice of the easement?

a) There is no substantial evidence which reasonably supports a finding of an overt act and intentional abandonment of the irrigation ditch easement.

■ Before discussing the evidence some other questions require clarification. The pleadings make an issue of whether a prescriptive easement for this ditch had been acquired. The evidence is positive and not disputed that this ditch had been used for more than the 20-year period [1] to irrigate the Harmon lands. The trial court made no finding on this issue but indicated by the finding of abandonment that such easement had been established. Under these circumstances our rules [2] require a direct finding on that issue. On remand such a finding is directed.

■ Proof of abandonment of such an easement requires action releasing the

1. Zollinger v. Frank, 110 Utah 514, 175 P.2d 714, 170 A.L.R. 770; Griffiths v. Archibald, dissenting opinion, 2 Utah 2d 293, 295, 272 P.2d 586, 587; In re Drainage Area of Bear River, 12 Utah 2d 1, 361 P.2d 407.

2. Utah Rules of Civil Procedure, 9 U.C.A. 1953, Rule 52.

ownership and the right to use with clear and convincing proof of an intentional abandonment. This requires that plaintiffs ceased to use this easement to irrigate their land with the intention to make no further use of it.[3] In considering the question we view the evidence and inferences therefrom in the light most favorable to the findings.[4] On the other hand, it must be kept in mind that proof by clear and convincing evidence requires more clear and persuasive evidence and not subject to as much doubt as where only a preponderance of the evidence is required.[5]

There was testimony that a witness who had lived in this neighborhood had not observed water running through this ditch since 1951—the year before the heavy spring flood of 1952. Another neighborhood witness testified that at the time of the trial in 1962 he had lived there six years but had seen no water run through this ditch during that time. Plaintiff Conrad Harmon, after testifying positively that they had used this ditch to and including the last part of 1958, on cross-examination, testified they did not use it after the culinary water was piped into that neighborhood. The evidence indicated that the culinary water was piped in in 1954 or 1955. He was not confronted with the conflict in his testimony and made no explanation.

Plaintiffs' witnesses, including Conrad Harmon, testified that except for an occasional year like 1952 and 1959, when the water was plentiful and not needed, the Harmons had irrigated their land through this ditch until the last part of 1958. They testified that at that time a Charles Simms disputed their right to use that ditch and threatened to have them arrested if they turned the water into the north ditch. They claimed they did not need the water in 1959, and that early in 1960 the United States Corps of Engineers enlarged and straightened the Jordan River channel, dumping piles of dirt in their ditch during March and the first part of April. Shortly thereafter the Rasmussen home was moved onto the Rasmussen lot, and Rasmussen forbade them to clean the ditch or turn the water over that route unless they made a culvert across his lot. After much arguing on this question, plaintiffs commenced this action to establish their right by prescriptive easement to use this ditch and for damages.

3.  1 Am.Jur.2d Ed. 15–18, Sections 15 to 17; same volume, p. 29, Section 36; 17A Am.Jur. 775–777, Sec. 170; 1 C.J.S. Abandonment § 1, p. 4; 3 Tiffany on Real Property, 3rd Ed. 384–392, Sec. 825, Abandonment; Brown v. Oregon Short Line Railroad Co., 36 Utah 257. 102 P. 740, 24 A.L.R.,N.S., 86; Tuttle v. Sowadzki, 41 Utah 501, 126 P. 959; Dahnken v. George Romney & Sons Co., 111 Utah 471, 184 P.2d 211; Sullivan Const. Co. v. Twin Falls Amusement Co., 44 Idaho 520, 258 P. 529.

4.  Lovett v. Continental Bank & Trust Co., 4 Utah 2d 76, 286 P.2d 1065; State v. Berchtold, 11 Utah 2d 208. 357 P.2d 183.

5.  Lovett v. Continental Bank & Trust Co., 4 Utah 2d 76, 286 P.2d 1065.

The plaintiffs, the Harmons, concede that they filled dirt in the north branch of the ditch around the headgate to prevent the water being turned into that ditch by children removing the headgate board when the water was not wanted in that ditch, and that once they used a truck to make the filling but only at the headgate. Defendant Mr. Rasmussen conceded that he filled the ditch for about five feet at one point and leveled the piles of dirt which the engineers had dumped in the ditch, and that he forbade the plaintiffs Harmon to clean the ditch out and run the water to their property unless they agreed to pipe it in a culvert over his land.

The evidence barely suggests that the Harmons with intention of no future use abandoned their right to use this ditch to irrigate their land. Neither filling in around the headgate for the purpose of preventing unwanted water being turned into the ditch, nor the claim that the ditch was not used for several years in succession is clear and convincing proof of an intentional abandonment of their prescriptive right to use this ditch. Further, the evidence is very weak that they failed to use this ditch for more than one successive year except when such use was forbidden by persons claiming the right to stop such use. There was no testimony that no such use was made but only that two witnesses who lived in that neighborhood did not see such use. So we conclude that the finding of abandonment of this right is unreasonable in view of all the evidence and direct that a finding that they did not abandon their easement be entered.

b) The evidence does not require a finding that by ratification the Rasmussens made the U. S. Corps of Engineers their agent in piling dirt in this ditch and thereby became liable for such filling. No connection before or after the filling is shown between the Engineers and the Rasmussens. The Rasmussens positively asserted that they owned their lot and that the Harmons could not run their water across their lot without a culvert. There is no evidence that the asserted right to prevent the use of the ditch was based on or connected with the fact that dirt had been piled in the ditch. They simply asserted "this is our land and this ditch cannot be used without a culvert." The only claimed connection between the piles of dirt in the ditch and Rasmussens' claimed right to prevent the use of this ditch is in their attorney's argument that since the ditch had piles of dirt in it when Rasmussens purchased their lot, that evidence requires a finding that they made the purchase in good faith and without notice of Harmons' claimed easement to use the ditch. This argument is made without pleadings to that effect and without evidence directed to that question.

**428**

In Jones v. Mutual Creamery Co., 81 Utah 223, 231, 17 P.2d 256, 259, 85 A.L.R. 908, relied on by plaintiffs, we quoted with approval from 2 C.J. 467 as follows:

" * * * ratification as it relates to the law of agency may be defined as the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent in doing the act or making the contract, without authority to do so. * * * "

We find no evidence which meets the requirements of ratification.

■ c) Defendants' argument that the evidence requires a finding that they purchased their lot in good faith without notice of this easement is without merit. When they made the purchase the ditch was there with fresh unleveled piles of dirt in it. This was sufficient notice of the claimed easement [6] to put a prudent buyer on inquiry.

Reversed with instructions to make the findings herein directed and a judgment affirming plaintiffs' easement. Costs to appellants.

HENRIOD, McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

6. 17A Am.Jur. 761-2, Sec. 153; 28 C.J.S. Easements § 49, pp. 713-714.