2008 UT App 192

**Garth LUNT, trustee of the Garth O. Lunt Revocable Trust, Plaintiff, Appellee, and Cross-appellant,**

v.

**Harold LANCE and Diane Lance, Defendants, Appellants, and Cross-appellees.**

No. 20070014–CA.

Court of Appeals of Utah.

May 30, 2008.

Shawn W. Potter and Kraig J. Powell, Park City, for Appellants and Cross-appellees.

Randy B. Birch and Corey S. Zachman, Salt Lake City, for Appellee and Cross-appellant.

Before GREENWOOD, P.J., BENCH and McHUGH, JJ.

## OPINION

GREENWOOD, Presiding Judge:

¶1 Harold and Diane Lance appeal the trial court's conclusion that Garth Lunt, trustee of the Garth O. Lunt Revocable Trust, had a prescriptive easement to land between his property and the Lances' (the Lane). The Lances also appeal the denial of their post-trial motion to disqualify Judge Pullan and their motions for a new trial. Lunt cross-appeals, claiming that the trial court inappropriately ruled on the issue of abandonment and, assuming that such a ruling was appropriate, incorrectly applied the doctrine of abandonment to the facts of this case. We affirm.

## BACKGROUND

¶2 In 2002, Lunt brought suit against the Lances asserting rights to use and ownership of the Lane, a strip of land measuring thirty-four feet wide by approximately two-hundred feet long.[1] The Lane is located within the legal boundaries of the Lances' property. Despite the Lances' countersuit, the only issues remaining to be resolved at trial were whether Lunt was entitled to ownership or use of the Lane through either boundary by acquiescence or prescriptive easement. These two issues were heard by Judge Pullan in a bench trial in early November 2005. On the first day of trial, Judge Pullan noted that he had been "consulted about a boundary line issue" related to the Lunt property in his former capacity as the county attorney, but that he had "no recollection with whom [he had] talked." Both parties stated affirmatively at that time that they "had no concerns about a possible conflict of interest."

¶3 After conclusion of the trial, Judge Pullan ruled that Lunt had failed on his boundary by acquiescence claim but had prevailed in establishing that he had a prescriptive easement with respect to the Lane. Approximately four months later, on March 24, 2006, the Lances filed a rule 63(b) motion seeking to remove Judge Pullan and requesting a new trial, claiming that they had just learned the full extent of Judge Pullan's prior involvement with the Lunt property. Pursuant to rule 63, Judge Pullan immediately certified the motion to Judge Taylor, the presiding judge. *See* Utah R. Civ. P. 63(b)(2). Refusing to overturn Judge Pullan's factual findings or Ruling or to order a new trial, Judge Taylor reassigned any further proceedings in the case to Judge Schofield in order to avoid any appearance of impropriety. Shortly thereafter, the Lances filed a Motion for New Trial or in the Alternative to Amend Judgment and/or Take Additional Testimony. Judge Schofield denied the Lances' motion for a new trial, stating that Judge Pullan was in the best position to evaluate the evidence at trial and that his prior limited involvement with the property

---

1. Although the exact length of the Lane was disputed, trial testimony generally estimated it to be roughly 150 to 235 feet.

"did not create a bias or prejudice which justifies a new trial." In addition, Judge Schofield denied the Lances' alternative motion to amend or take additional testimony, holding that they "simply have no reason which justifies amending or relieving them from judgment."

### Testimony at Trial

¶ 4 In addition to testifying himself, Lunt called three witnesses as part of his case in chief: (1) his brother Jack Lunt, who lived on the Lunt property temporarily and used the Lane numerous times over the years; (2) his sister Moneves Boren, who lived on and worked at the farm formerly located on the Lunt property; and (3) his eighty-eight-year-old neighbor, Eldon Carlisle, who lived near the Lunt property throughout his life. Jack Lunt testified that both the Lunt family and their predecessors in interest (the McNaughtens) used the Lane for moving farm equipment, mowing machines, cattle, bob sleighs, and wagons to and from the rear acreage of the Lunt property. Boren testified similarly, that the Lane was historically used for parking cars and for transporting farm equipment, hay, and cattle to and from the rear acreage of the Lunt property. Carlisle likewise testified that the Lane was historically used to transport cattle to and from the rear acreage of the Lunt property and that he remembered the Lane being used to park cars as early as the late 1920s. Carlisle further testified that he personally witnessed Mr. McNaughten using the Lane in this manner from the 1950s through the early 1990s. Each of these witnesses also testified as to their estimations of the Lane's dimensions.

¶ 5 In support of their case, the Lances called Duane Smith, Frankie Housell, and Frank Pia to testify.[2] Smith testified that he had worked on both the Lunt property (when owned by the McNaughtens) as well as the Lances' property (when owned by the Lances' predecessors in interest, the Witts).

He also testified that he did not remember using the Lane to access the rear acreage of the Lunt property when he worked for Mr. McNaughten. Smith further stated that the Witts had machinery and farm equipment parked on both sides of the Lane, implying to him that the Lane was the Witts' property. Housell is the Witts' granddaughter and stayed with them every weekend during the late 1940s and early 1950s. She testified that the Lane was a driveway to the Witt property and that it measured roughly two-hundred feet in length. Finally, Pia, an expert photogrammetrist,[3] testified that he believed the Lane to be approximately 150 to 175 feet in length.

### Judge Pullan's Prior Experience

¶ 6 As stated above, Judge Pullan informed the parties on the first day of trial that he vaguely remembered some involvement in a boundary issue related to the Lunt property when he worked in the county attorney's office. Further inquiries by the Lances revealed that before his appointment to the bench, Judge Pullan was a member of the Heber City Planning Commission. It was in this capacity that then-Commissioner Pullan was involved with the Lunt property at issue. In September 1998—more than seven years prior to commencement of this suit—Boren appeared before the Heber City Planning Commission in an attempt to change the zoning of a portion of the Lunt property from agricultural to residential. The zoning change was unopposed and the seven-member planning commission approved the change unanimously.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 7 The Lances first claim that Judge Pullan erred by failing to recuse himself in light of his prior involvement with the property at issue. " 'Determining whether a trial judge committed error by failing to recuse

2. In addition to the above mentioned witnesses, both the Lances and Paulette Thurber testified. However, neither party makes more than cursory reference to the testimony of these three witnesses and, consequently, we do not describe their testimony.

3. Photogrammetry is defined as "the science of making reliable measurements by the use of photographs and esp. aerial photographs." Webster's Ninth New Collegiate Dictionary 885 (Merriam–Webster Inc. 1986), *available at* http://www.merriam-webster.com/dictionary/photogrammetry.

himself ... is a question of law, and we review such questions for correctness.'" *State v. Tueller*, 2001 UT App 317, ¶ 7, 37 P.3d 1180 (alteration in original) (quoting *State v. Alonzo*, 973 P.2d 975, 979 (Utah 1998)).

¶ 8 Next, the Lances allege that both Judge Schofield and Judge Taylor erred in denying the Lances' motions for a new trial. A trial court's denial of a motion for a new trial is upheld unless there is a clear abuse of discretion. *See Alvey Dev. Corp. v. Mackelprang*, 2002 UT App 220, ¶ 9, 51 P.3d 45.

¶ 9 Finally, the Lances argue that the trial court erred in holding that there was clear and convincing evidence to justify the conclusion that a prescriptive easement existed. A trial court's decision that clear and convincing evidence was presented is reviewed by the appellate courts for clear error, "notwithstanding the clear and convincing standard of proof below." *In re R.R.D.*, 791 P.2d 206, 208 (Utah Ct.App.1990) (internal quotation marks omitted). And, while the conclusion that a prescriptive easement exists is a question of law, *see Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah 1998), it is so fact-dependent that trial courts are generally accorded "a broad measure of discretion when applying the correct legal standard to the given set of facts" and are only overturned if the trial court's decision was in excess of this broad discretion. *Id.*

¶ 10 On cross-appeal, Lunt argues that the trial court should not have addressed the issue of abandonment because it was not pleaded or argued by consent of the parties. This presents "a [question] of law that we review under a correction-of-error standard." *Cowley v. Porter*, 2005 UT App 518, ¶ 31, 127 P.3d 1224.

¶ 11 In addition, Lunt asks this court to hold that the trial court incorrectly applied the doctrine of abandonment and, as a result, unjustly limited his prescriptive rights in the Lane. The factual findings of a trial court sitting without a jury are reviewed for clear error. *See Department of Human Servs. ex rel. Parker v. Irizarry*, 945 P.2d 676, 678 (Utah 1997).

## ANALYSIS

### I. Judge Pullan's Recusal Was Not Required

¶ 12 The Lances argue that Judge Pullan erred in failing to recuse himself because of his previous involvement in a zoning issue related to the Lunt property. Concomitantly, they contend that Judge Taylor should have ordered a new trial for the same reasons. A judge shall recuse himself from any proceeding in which his "impartiality might reasonably be questioned, including but not limited to instances where ... the judge has ... personal knowledge of disputed evidentiary facts concerning the proceeding." Utah Code of Jud. Conduct Canon 3(E)(1)(a) (1997). Nonetheless, parties may waive disqualification of a judge otherwise disqualified under canon 3(E) of the Utah Code of Judicial Conduct if, after disclosure of the basis for disqualification, the parties consent to the judge's continued participation in the proceeding. *See* Utah Code of Jud. Conduct Canon 3(F). "Although litigants are entitled to a judge who will hear both sides and decide an issue on the merits of the law and the evidence presented, they are not entitled to a judge whose mind is a clean slate." *Madsen v. Prudential Fed. Sav. & Loan Ass'n*, 767 P.2d 538, 546 (Utah 1988).

¶ 13 On the first day of trial Judge Pullan disclosed that prior to becoming a judge he had been "consulted about a boundary line issue" related to the Lunt property but that he had "no recollection with whom [he had] talked." There is nothing in the record showing, nor do the Lances suggest, that Judge Pullan misstated his recollection of his prior involvement with the Lunt property. Following this full disclosure, the parties each stated that they did not recall previously interacting with Judge Pullan and the proceedings resumed. Four months after Judge Pullan ruled in favor of Lunt, the Lances filed their first objection to Judge Pullan's participation in the case.

¶ 14 Judge Pullan's involvement with the Lunt property was approximately seven years prior to trial when he was acting chair for the eight-member Heber City Planning

Commission.[4] At the meetings in question,[5] Boren moved to rezone a portion of the Lunt property from agricultural to residential. Hearing no objection, the planning commission unanimously approved the motion in less than ten minutes.[6]

¶ 15 We are not persuaded that Judge Pullan's involvement with a zoning issue for less than ten minutes nearly a decade earlier could have provided him with "personal knowledge of disputed evidentiary facts concerning the [trial at issue]." Utah Code of Jud. Conduct Canon 3(E)(1)(a). Furthermore, both parties waived the disqualification when they were apprised of Judge Pullan's recollection of his involvement and did not object to his continuing to hear the case. Any residual, non-specific information retained by Judge Pullan from that involvement is insufficient grounds for disqualification as neither party is "entitled to a judge whose mind is a clean slate." *See Madsen,* 767 P.2d at 546. Finally, the Lances point to nothing in the record demonstrating that Judge Pullan's prior involvement with the planning commission resulted in actual bias or prejudice.[7] As such, we hold that Judge Pullan was not required to recuse himself.

█ ¶ 16 Furthermore, in denying the Lances' motion for a new trial Judge Taylor stated that the motion before him was not the appropriate vehicle with which to seek a new trial. Specifically, Judge Taylor pointed out that "[q]uestions about a trial already conducted and a ruling already rendered must be determined by either the appellate process or through Rule 60, Utah Rules of Civil Procedure."

¶ 17 Despite this fatal deficiency, Judge Taylor carefully reviewed Judge Pullan's Ruling and noted that

[Judge Pullan] necessarily made extensive findings of fact about the historic use and condition of the property from the late 1920's through the present. The past, present or future zoning classifications of the area was not considered or relevant to his conclusion that from the 1930's through at least the mid–1970's there was open, notorious, continuous and adverse use of the subject lane for more than 20 years to establish a prescriptive right in favor of [Lunt].

In light of the inappropriateness of the Lances' motion, and seeing no demonstration of actual bias, prejudice, or impropriety, Judge Taylor denied the Lances' request for a new trial. As stated above, Judge Pullan was not required to recuse himself, and, accordingly, we conclude that Judge Taylor did not abuse his discretion in denying the Lances' motion to disqualify Judge Pullan and for a new trial.

## II. The Evidence Supports the Existence of a Prescriptive Easement

█ ¶ 18 The Lances also contend on appeal that there was not clear and convincing evidence sufficient to justify the existence of a prescriptive easement. A prescriptive easement exists where a party proves that their use of another's land was "(1) open, (2) notorious, (3) adverse, and (4) continuous for at least 20 years." *Marchant v. Park City,* 788 P.2d 520, 524 (Utah 1990). Each of these elements must be proven by clear and convincing evidence. *See Marchant v. Park City,* 771 P.2d 677, 682 (Utah Ct.App.1989), *aff'd,* 788 P.2d 520 (Utah 1990). An appellate court will reverse a trial court's decision that clear and convincing evidence was presented only if that decision is clearly erroneous. *See In re R.R.D.,* 791 P.2d 206, 208 (Utah Ct. App.1990). To qualify as clearly erroneous, a

---

4. Due to a conflict of interest, then-chairman Paul Royall excused himself, and vice-chair Pullan was required to conduct two meetings.

5. The motion at issue was initially presented at a planning commission meeting on August 27, 1998. Following a brief discussion, the planning commission decided to set this issue for a public hearing on September 24, 1998.

6. Despite this unanimous approval, the zoning change was not effective until it received final

approval from the Heber City Council, with which Judge Pullan apparently had no involvement.

7. It appears that the Lances' only allegation of actual bias is the adverse ruling in the present case. However, in *In re Affidavit of Bias,* 947 P.2d 1152 (Utah 1997), the Utah Supreme Court noted that "the mere fact that a judge decides a case against a party may not be considered in determining bias." *Id.* at 1154.

trial court's "findings [must be] either against the clear weight of the evidence or [must] induce a definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks omitted). Moreover, the finding that an easement exists is generally so highly fact-intensive that appellate courts " 'accord[ ] the trial judge a broad measure of discretion when applying the correct legal standard to the given set of facts.' " *Orton v. Carter,* 970 P.2d 1254, 1256 (Utah 1998) (quoting *Valcarce v. Fitzgerald,* 961 P.2d 305, 311 (Utah 1998)).

¶ 19 The Lances do not appeal the trial court's determination as to any of the prescriptive easement elements individually. Instead, they simply assert that "[their] witnesses were at least as credible as [Lunt's], and arguably more so." In support of this assertion, the Lances present nearly six pages detailing the strengths and weaknesses of the testimonial evidence presented at trial and ask this court to evaluate it anew. However, we may not substitute our judgment for that of the trial court as trial courts are in a better position to weigh conflicting evidence and evaluate the credibility of witness testimony. *See* Utah R. Civ. P. 52(a); *Richins v. Struhs,* 17 Utah 2d 356, 412 P.2d 314, 315 (1966) (noting that, in reviewing a trial court's conclusion that an easement exists, appellate courts "make allowance for the advantages the trial court has because of [its] proximity to the parties, the witnesses and the trial"). Or, as Judge Schofield stated in denying the motion for a new trial, "[The Lances] had their opportunity at trial to show that [Lunt] did not use the Lane in the manner asserted by [the Lances'] witnesses, but failed satisfactorily to do so."

¶ 20 Although faced with numerous witnesses and conflicting testimony regarding decades of historical use, the trial court specifically noted in its Ruling that it found "the testimony of Mr. Eldon Carlisle [ (a witness for Lunt) ] ... [to be] particularly credible." Trial courts are explicitly vested with the responsibility of making credibility determi-

nations in a bench trial and are particularly adept at doing so. *See* Utah R. Civ. P. 52(a). In determining that the elements of a prescriptive easement had been met, the trial court made extensive findings of fact. More specifically, the trial court found that the Lunt/McNaughten use of the Lane from the 1930s to the present was common but varied. In the early years the Lane was used to move cattle and farm equipment, park cars, and access the Lunt/McNaughten acreage and barn. By 1979, the Lane was used almost exclusively as a driveway for access to the Lunt/McNaughten property, and by 1984, all other uses had ceased.

¶ 21 In addition, the trial court compared the facts of this case to those in *Richins v. Struhs,* 17 Utah 2d 356, 412 P.2d 314 (1966). *Struhs* involved two adjoining landowners whose sole access to their respective properties was a common driveway, which their predecessors built together and maintained and used cooperatively for more than forty years. *See id.* at 314–15. Upon purchasing one of the properties, the Struhs "caused a survey to be made and thereafter erected a fence in the driveway on what they assert[ed was] the true boundary," thereby blocking the Richins' access to their property. *Id.* at 315. The *Struhs* court held that the parties' (and their predecessors') cooperative use of the shared driveway for more than the prescriptive period was such that Richins "ha[d] established a prescriptive right to continue to so use it." *Id.* at 316–17. The trial court in the instant case stated that, "[l]ike the adjoining property owners in *Struhs,* the Witts and McNaughtens established and harmoniously used a common lane from the 1930's through at least the mid–1970's." Thus, according to the trial court, this harmonious use established a prescriptive right in favor of Lunt as a matter of law.[8] We conclude that there is sufficient evidence to support the trial court's findings and therefore hold that there is no clear error in the trial court's determination that there was clear and con-

---

8. In *Struhs,* the Utah Supreme Court further clarified how "harmonious use" could satisfy the seemingly diametric adverseness requirement, stating that, because the defendant did not know that the common driveway was on his property, he could not have granted permission. *See Richins v. Struhs,* 17 Utah 2d 356, 412 P.2d 314, 315–16 (1966). This lack of permission makes the historical use presumptively adverse from its inception. *See id.*

vincing evidence of the existence of a prescriptive easement.[9]

### III. Partial Abandonment of the Easement

¶ 22 On cross-appeal, Lunt argues that the trial court's consideration of abandonment was inappropriate because it was not properly before the trial court. In the alternative, Lunt claims that even if abandonment was appropriately considered, the trial court erred in its application of the doctrine of abandonment. Each of these arguments will be discussed below.

### A. Lunt Failed to Preserve an Objection to the Appropriateness of the Abandonment Ruling

¶ 23 Lunt asks this court to find that the trial court erred in ruling on the issue of abandonment because it was not argued by either party and the trial court is precluded from granting relief which was neither pleaded nor tried. However, "claims not raised before the trial court [generally] may not be raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. An issue is not preserved unless it is " 'presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.' " *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (quoting *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968); *see also Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶¶ 20–22, 163 P.3d 615. This preservation rule has been extended to apply to every claim "unless a [party] can demonstrate that exceptional circumstances exist or plain error occurred." *Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (internal quotation marks omitted). Furthermore, appellants are required to "cit[e] to the record showing that the issue was preserved in the trial court." Utah R.App. P. 24(a)(5)(A).

¶ 24 Lunt has not cited to the record to show that he objected to the court's consideration of the issue of abandonment, and we find no evidence of such preservation in the record. Although the parties did not refer to or argue abandonment during trial, and it was not raised in the pleadings, the trial judge briefly addressed the issue with the Lances' counsel during closing arguments. Abandonment was subsequently explicitly addressed in the trial court's Ruling. The Lances filed Objections to Proposed Findings, Order and Judgment, but Lunt did not. At a hearing on the objections, Lunt's counsel discussed the basis for the abandonment ruling, but did not assail the power of the trial court to address the subject. Ultimately, the preservation rule is grounded in "orderly procedure," and Lunt's failure to object deprived the trial court of its "opportunity to address [the] claimed error and, if appropriate, correct it." *Pratt*, 2007 UT 41, ¶ 15, 164 P.3d 366 (internal quotation marks omitted). Finally, Lunt has not argued that there are exceptional circumstances or that the trial court committed plain error. *See Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. Accordingly, we refuse to address whether the trial court erred in ruling on the issue of abandonment.

### B. Correctness of Abandonment Application

¶ 25 Alternatively, Lunt argues that the trial court erred in its application of the doctrine of abandonment. "It is well recognized that an easement ... may be abandoned." *Western Gateway Storage Co. v. Treseder*, 567 P.2d 181, 182 (Utah 1977). An easement is abandoned where there is action releasing the right to use the easement combined with clear and convincing proof of the intent to make no further use of it.[10] *See Harmon v. Rasmussen*, 13 Utah 2d

---

9. In so holding, we also necessarily determine that Judge Schofield did not abuse his discretion in denying the Lances' motion for new trial.

10. Lunt points to *State v. Rynhart*, 2005 UT 84, 125 P.3d 938, to support his claim that proof of abandonment must be by "clear, unequivocal, and decisive evidence." *See id.* ¶ 14. However, *Rynhart* was a criminal case discussing the propriety of a police search and seizure of a van found unoccupied in a marsh. *See id.* ¶ 1. In dicta, the *Rynhart* court stated that proof of

abandonment of personal property generally requires "clear, unequivocal, and decisive evidence." *See id.* ¶ 14 (citing *Linscomb v. Goodyear Tire & Rubber Co.*, 199 F.2d 431, 435 (8th Cir.1952)). Despite requiring that *unequivocal* evidence be presented to demonstrate an intent to abandon other property rights, *see, e.g., Anderson v. Brinkerhoff*, 756 P.2d 95, 98, 99 (Utah Ct.App.1988) (implicitly recognizing that the abandonment of a property right under a contract requires "intentional, unequivocal relin-

422, 375 P.2d 762, 765 (1962). Put another way, "a history of non-use, coupled with an act or omission showing a clear intent to abandon" is sufficient to show abandonment. 25 Am.Jur.2d *Easements & Licenses in Real Property* § 98 (2004). Actual abandonment or intent to abandon may also be inferred from extended non-use of a portion of an easement "in connection with other facts." *Brown v. Oregon Short Line R.R. Co.*, 36 Utah 257, 102 P. 740, 742 (1909). In determining whether an easement has been abandoned, courts should consider "whether or not the right was acquired by prescription or grant, the extent of its use, and the actual intent of the owner." *Western Gateway*, 567 P.2d at 182.

¶ 26 Lunt argues that the use of the Lane as a whole was never abandoned and that he never intended to abandon any part of it. In its Ruling, the trial court limited the length of the easement to 150 feet—the distance from 600 West to the gate across the Lane— and the width of the easement to the standard width of a driveway as "required by Heber City ordinances"—20 feet. The partial abandonment of the easement will be discussed below.

### 1. Length of the Easement

¶ 27 While it is unclear who built the gate across the Lane, the trial court found that Lunt did not use the Lane past the gate after it was erected in the early 1980s. Specifically, the trial court found that "the gate blocking the [L]ane was constructed in the early 1980's. From that date, [Lunt] ceased to use the [L]ane west of the gate. For more than 20 years, [Lunt] has acquiesced in the closure, never taking any action to object." Based on these findings, the trial court concluded that Lunt's right to the easement west of the gate had been extinguished. Although the extinguishment was couched in terms of abandonment, the trial court's reference to the twenty year time period seems not accidental and implies that the trial court also used the elements of modification by prescription, *see* Restatement (Third) of Prop.: Servitudes § 7.7 (2000), to find that Lunt had abandoned that portion of the easement west of the gate. This conflation is understandable as the facts that lead to a determination of each are very similar.

¶ 28 An easement is extinguished by prescription where "use of [the] property violates a servitude burdening the property and the use is maintained adversely to a person entitled to enforce the servitude for the prescriptive period." *Id.; see also Marchant v. Park City*, 788 P.2d 520, 524 (Utah 1990). In other words, adverse use by the servient estate holder (the Lances) for more than twenty years, without objection by the dominant estate holder (Lunt), is sufficient to extinguish the easement. In contrast, as stated above, an easement is abandoned only where the easement holder releases its rights in the easement with evidence of a clear and convincing intent to no longer exercise the easement rights. *See Harmon*, 375 P.2d at 765. The difference between these two methods of modification appears to be one of perspective. When an easement is extinguished by prescription it is primarily the actions of the servient estate holder—the one whose land is burdened by the easement— with which the court is concerned. *See* Restatement (Third) of Prop.: Servitudes § 7.7 (2007). However, in determining whether the easement has been abandoned the trial court focuses on the actions and intentions of the dominant estate holder—the one who benefits from the easement. *See Harmon*, 375 P.2d at 765.

¶ 29 Given Lunt's failure to use the Lane west of the gate for the past twenty-plus years, the dispositive question on appeal becomes whether there is clear and convincing proof of Lunt's intent to abandon that portion of the easement.[11] *See id.* It is

---

quishment"), no Utah court has directly required "clear, unequivocal, and decisive evidence" to prove intent to abandon a prescriptive easement. Thus, we are bound by the Utah Supreme Court's explicit pronouncement that "clear and convincing proof" of an intent to abandon an easement is all that is required. *Harmon v. Rasmussen*, 13 Utah 2d 422, 375 P.2d 762, 765 (1962).

11. We note that whether clear and convincing proof was presented is a very fact-intensive question and is resolved through weighing the credibility of the various witnesses and exhibits

undisputed that a gate was installed blocking a portion of the Lane. The trial court was unable, however, to determine who built the gate. Without evidence of who built the gate, the trial court relied, in large part, on *Hudson v. Pillow*, 261 Va. 296, 541 S.E.2d 556 (2001), to aid in its decision. In *Hudson*, the Virginia Supreme Court held that, in addition to non-use, a person seeking to prove abandonment of an easement must prove *either* that the easement holder intended to abandon it *or* that the easement holder acquiesced in the adverse use of the easement by the servient estate holder. *See id.* at 560–61. The Virginia court determined that abandonment was established where there was "non-use of the easement coupled with acts by the servient owners that were inconsistent with, or adverse to, the future enjoyment of the easement by the dominant owners for a period of time sufficient to create a prescriptive right." *Id.* at 561 (internal quotation marks omitted). While not expressly adopting the *Hudson* holding, the trial court implicitly adopted *Hudson's* rule as an alternative way of proving intent to abandon.[12] Thus, the trial court interpreted the twenty-plus years of adverse use by the Lances, without objection from Lunt and coupled with non-use by Lunt, as evidence of Lunt's intent to abandon the easement west of the gate. Consequently, and in light of the specific, aforementioned factual deficiency in the evidence, we cannot say that the trial court clearly erred in ruling that Lunt had abandoned the remaining length of the easement by "ceas[ing] to use the lane west of the gate" without "taking any action to object" to the Lances' adverse use of the same "[f]or more than 20 years."

## 2. Width of the Easement

■ ¶ 30 Relying almost exclusively on the trial court's statements made three months after its Ruling, Lunt also argues that the trial court incorrectly determined that a portion of the easement width had been abandoned. In the section of its Ruling addressing the "Scope of the Remaining Prescriptive Easement," the trial court stated that "[Lunt] ha[s] a prescriptive easement for a driveway[and t]he width of the driveway shall be commensurate with the width required by Heber City ordinances." Earlier in the Ruling, however, the trial court described the Lane as being "34 feet wide." Despite this unambiguous determination, the trial court, at a hearing three months after the Ruling, addressing the Lances' Objection to Proposed Findings, Order and Judgment, noted that its intent was "that the width of the easement was at one period of time the broader width [of 34 feet] but that it had been abandoned, and ... what remained was a 20–foot width for purposes of a driveway." Thus, the threshold issue facing this court is whether the trial court's finding that Lunt had abandoned approximately fourteen feet of the width of the Lane was clearly erroneous.

¶ 31 Evidence of Lunt's non-use of the fourteen feet in width of the Lane is certainly more tenuous than that regarding the portion of the Lane west of the gate. Primarily, it consists of Lunt using the Lane from the early 1980s for vehicular use only, not for driving cattle and other agricultural uses. We must thus determine if this justifies the trial court's limiting the width of the easement to the width of a driveway as "required by Heber City ordinances." Although addressing the width of a public easement in a highway, the Utah Supreme Court, in *Whitesides v. Green*, 13 Utah 341, 44 P. 1032 (1896), held that the width of an easement gained by prescription may be inferred from "the usual width of highways in the locality ... in connection with other evidence." *Id.* at 1033. Further, the *Whitesides* court stat-

---

presented at trial. Trial courts are in the best position to weigh these competing pieces of evidence and, therefore, we grant deference to a trial court's determination of the same. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 311, 314 (Utah 1998) (granting trial judges "a broad measure of discretion" in evaluating the complex factual scenarios routinely present in a prescriptive easement context).

12. Adoption of this alternative method of proving intent to abandon is also supported by Utah precedent. *See Brown v. Oregon Short Line R.R. Co.*, 36 Utah 257, 102 P. 740, 742 (1909) (stating that extended non-use of an easement, "in connection with other facts, may be evidence of an intention to abandon or of actual abandonment").

ed that the width of the prescriptive easement was not strictly limited to the "beaten path." *Id.*

> The purpose for which the easement was acquired must determine the effect of the right parted with by the owner, and the width necessary for enjoyment by the [easement holder]. Where the easement is acquired by prescription ... such width must be determined from a consideration of the facts and circumstances peculiar to the case, because in such event the court cannot say that in law the [easement] is of a certain width....

*Id.*

 ¶ 32 In the instant case, Lunt's historic use of the Lane varied but was consistently confined to the use that one would make of a driveway to access the rear of his or her property.[13] Recognizing this, the trial court ruled that Lunt had clearly established a prescriptive easement in the Lane "for [purposes of] a driveway." The court further ruled that the width of the easement would be inferred, in connection with other facts, from the standard width of a driveway as "required by Heber City ordinances." We can only assume from the record before us that the trial court, in so holding, determined that the width of a standard Heber City driveway was "the right parted with by the [Lances], and the width necessary for enjoyment by [Lunt]." *See id.* Thus, we conclude that the trial court did not clearly err in limiting the width of the prescriptive easement in the Lane to twenty feet.

## CONCLUSION

¶ 33 Recusal of Judge Pullan was not required and Judge Taylor did not abuse his discretion in refusing to order a new trial because of Judge Pullan's prior involvement regarding the property in question. Furthermore, it was not clear error for the trial court to hold that clear and convincing evidence of the existence of a prescriptive easement was presented. Moreover, Lunt failed to preserve his argument that the trial court inappropriately ruled on the issue of aban-

donment, and we determine that the trial court appropriately applied the doctrine of abandonment to the length of the easement west of the gate and its width east of the gate. In addition, there was no abuse of discretion in Judge Schofield's denial of the Lances' motion for a new trial. Based on the foregoing, we affirm.

¶ 34 WE CONCUR: RUSSELL W. BENCH and CAROLYN B. McHUGH, Judges.

---

**13.** It is clear, under Utah law, that the extent of use of a prescriptive easement must be limited to its historical use. *See Valcarce,* 961 P.2d at 312.

However, the present question is not what use Lunt may make of the Lane, but to what dimensions Lunt's use should be confined.